Unsealed 12/8/06

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
    Plaintiff,

CASE NO. 06-20233 CR MORENO

vs.

LANDEN NOAH KESSLER,
    Defendant.
_____/

SEALED
OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

COMES NOW, Defendant, **LANDEN NOAH KESSLER,** by and through undersigned counsel, and pursuant to Rules 32(a)(1), 32(b)(6)(B) and 32(c)(3)(D) of the Federal Rules of Criminal Procedure, files these his Objections to the Presentence Investigation Report filed by the Unites States Probation Office on November 1, 2006 and states:

1. On page 5, paragraph 10, **KESSLER**, objects to the allegations made by Allison Weaver. Weaver resides in the state of Washington. **KESSLER** has had almost no contact with her and has seen her on only one occasion since his father's funeral. Weaver met **KESSLER**'s wife once at the Bar Mitzvah of Caron Helfer's son four or five years ago.

2. On pages 5 and 6, paragraph 11, **KESSLER**, objects to the allegations made by his first cousin, Caron Helfer. He particularly objects to those in which she claims he threatened her and her husband. **KESSLER** cautions that any allegations from this cousin should be taken with a grain of salt. **KESSLER** does admit that he went to Helfer for advice and discussed the situation with her and her husband when he discovered the SSA deposits. They lived next door to **KESSLER**. Helfer's husband asked **KESSLER** to lend him $4500.00 because their home was going into foreclosure. **KESSLER** lent him the money. The relationship deteriorated when **KESSLER** discovered the husband was fraudulently charging items to **KESSLER**'s credit card without his knowledge. **KESSLER** discovered fraudulent charges totaling $2833.45 had been charged to his Visa account with First USA . **KESSLER** started a fraud investigation into these charges. See, Composite Exhibit "A" attached hereto. [The first page of that exhibit shows the note Caron Helfer's husband left for "Mercy" authorizing her to allow charges to a Visa card # 4417-1680-8215-4984 which Helfer represents as his card. However, the charge statements for that account number which

constitute the following pages of the exhibit show the card belongs to **KESSLER**.]

3. On page 12, first entry, **KESSLER**, objects to the statement that his Bank of America personal checking account has a balance of $2603.00. The current balance as of November 5, 2006 is $1461.46. This asset is held jointly and only $730.73 should count towards his Total Assets.

4. On page 12, fourth entry, **KESSLER**, objects to the calculation that his equity in his residence is $32,380.00. Since he is married, only his portion of this equity should be used to calculate his Total Assets which is $16,190.00.

5. On page 12, fifth entry, **KESSLER**, objects to the calculation that his Total Assets equal $35,988. Using the corrected amounts noted above, his Total Assets equal $17, 925.73.

6. On page 12, twelfth entry, **KESSLER**, objects to the calculation that his Net Worth equals $27,698.00. Using the corrected amounts noted above, his Net Worth equals $ 9635.73.

7. On page 12, thirteenth entry, **KESSLER**, objects to the calculation that his monthly net income is $2610.00. Earlier in the report, on page 10, in paragraph 42, last sentence, it states that: "His October 6, 2006 pay stub indicates that in the year to date, the defendant has been paid $20,493 after taxes and deductions." If you divide $20,493.00 by 9 months, the average monthly net income for **KESSLER** is $2277, not $2610.

8. On page 12, fifteenth entry, **KESSLER**, objects to the calculation that his Total Income is $3700.00 and states that the correct amount is $ 3377.00.

9. On page 13, sixteenth entry, **KESSLER**, objects to the calculation that his Net Monthly Cash Flow is $640.00. His states that he neglected to report the following additional monthly expenses: Wife's Hebrew Classes: $ 100.00; ADT Security $25.00; Pest Control $25.00. Thus the corrected Net Monthly Cash Flow should reflect the amount of $157.00. This amount does not take into account any gifts or repairs.

10. On page 14, paragraph 54, **KESSLER**, objects to the calculation that the Hyundai Elantra

is worth $5715. The car is a former rental vehicle with over 108,000 miles. It desperately needs a new paint job, a new transmission, and has three windows that do not work. It is most definitely not "in good condition."

11. On page 14, paragraph 59, **KESSLER**, objects to the conclusion that he has the ability to pay a fine.

12. On page 16, Part E. Factors That May Warrant a Departure, paragraph 71, **KESSLER**, objects to the conclusion that there are no factors which warrant a departure and states that he is entitled to a downward departure for the following reason:

### A. 5K2.0 Activity Was Outside the Heartland

Section 5K2.0 of the USSG states in pertinent part:

> Under 18 U.S.C. Section 3553 (b) the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exits an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Circumstances that may warrant departure from the guideline range pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The decision as to whether and to what extent a departure is warranted rests with the sentencing court and on a case specific basis.

The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. **When a court finds an atypical case,** into which a particular guideline linguistically applies but where conduct significantly differs from the norm, **the court may consider whether a departure is warranted with those specific factors, whether or not mentioned anywhere else in the guidelines.** USSG Chapter 1, Part A. Paragraph 4(b). (Emphasis added).

Sentencing courts have been allowed great latitude in making determinations regarding downward departures. Under *United States v. Koon*, 116 S.Ct. 2035 (1996), a district court has broad discretion in fashioning departures. *Koon* clearly emphasizes that the sentencing guidelines do not eliminate all the district court's traditional sentencing discretion. It allows for departures if there exits a mitigating circumstance not adequately taken into consideration by the Sentencing Commission.

The facts of this case demonstrates that this is truly an atypical fraud case.

KESSLER conduct and circumstances are unique. His conduct can best be described as a crime of omission rather than a crime of commission. It's not that he did the wrong thing, it's more that he did not do the right thing. First, let's look at the circumstances that make this case unique, then we will review the conduct.

## UNIQUE CIRCUMSTANCES

**LANDEN NOAH KESSLER**, was born on February 27, 1977. He was the youngest of three sons and living in Seattle, Washington when his parents divorced in 1991. His mother was a waitress and his father was a nurse. Although he initially lived with his mother and brothers in Seattle after the divorce, he missed his loving, kind, and charismatic father and visited with him often. **KESSLER**'s love for his father was threatening to his mother and she eventually gave him an ultimatum-if you love and miss your father so much, go and live with him. And that is exactly what **KESSLER** did. In 1992, at the tender age of 15, he left his mother and two older brothers, and moved in with his father in North Miami. He and his mother have not spoken since. She did not attend his father's funeral in 1998.

**KESSLER**'s father, who never remarried, had been battling cancer since approximately 1982. But in 1996, cancer returned and by 1998, his father was seriously ill. **KESSLER** who lovingly cared for his father, was also a full time student by day and held a full time job at night. In July of 98, his father decided to try an experimental chemotherapy program in New York. By October, he was near death and **KESSLER** was told to come to New York immediately. He immediately left school, quit his job and moved to New York to stay with his father until he died in late December. **KESSLER** lost his entire family when his dad died. It is not hard to imagine how distraught he must have been. He was preoccupied getting his life on track, converting his failing grades for the semester to "incompletes" and getting his father's affairs in order. He hired a probate lawyer and filed the Death Certificate.

He was only 21. Unfortunately, during this time, he also turned to drugs to ease the pain. He was not immediately aware of the direct SSA deposits into their joint account. The direct deposits had been set up by his father prior to his father's death. His father had worked as a nurse for the Florida Department of Correction before his death. **KESSLER** admits that when he discovered the direct deposits he was conflicted about what to do. He admits "he did not do the right thing" immediately. This is a crime that came looking for him at a vulnerable time in his life. Please note that **KESSLER** has no prior criminal history of convictions or even arrests.

## **UNIQUE CONDUCT**

1. **KESSLER** contacted a lawyer, Howard Galbut, in an effort to settle with the SSA.

2. **KESSLER** sold the Miami home inherited from his dad in order to pay complete restitution to the SSA.

3. **KESSLER** completely reimbursed the SSA $79,194.60 months before the indictment. The first check in the amount of $74,661.50 was paid on September 19, 2005, with check number 1187 from the Trust Account of Howard N. Galbut, P.A. and on February 7th, 2006, he reimbursed an additional $4533.10 to the SSA with check number 1198 also from the Trust Account of Howard N.Galbut, P.A. The indictment was filed on April 18, 2006.

4. Although he was living in North Carolina, once **KESSLER** heard of the outstanding arrest warrant, he contacted a lawyer to arrange for a voluntary surrender. Since he is a truck driver that travels across the US, he had to make special arrangements to adjust his schedule to travel to the Southern District.

5. In early June, **KESSLER** drove to Miami to make the necessary arrangements, and on June 6, 2006, he voluntarily surrendered in Miami.

6. On September 28th, **KESSLER** plead guilty to the charges and accepted responsibility for not doing the right thing.

## **CONCLUSION**

It is respectfully submitted that there are unique circumstances in this case which take it out of the "heartland" of the typical fraud case and warrant a downward departure of the sentencing guideline range to a level 10 in order to qualify for a Zone B sentence of probation. It is also respectfully submitted that this should this Court conclude the Guidelines as written do not permit the departure requested, the Court should treat the Guidelines as advisory following *United States v. Booker,* 125 S.Ct.738, (2005) and sentence **KESSLER** to a period of probation. Prison and even house arrest would prevent him from working as a truck driver. As evidenced by his financial records, his salary is necessary to keep his house and support his wife. He is now a convicted felon. That stigma will follow him for the rest of his life. Without minimizing his actions, the conviction and a period of probation should be sufficient punishment under the mitigating circumstances outlined above.

WHEREFORE for the foregoing reasons, **KESSLER** respectfully requests that this Honorable Court will sustain the objections and that the Presentence Investigation Report be corrected and modified as contained herein and that this Honorable Court grant him a downward departure to a level 10 or, in the alternative, utilize your discretion under *Booker* and sentence **KESSLER** to one year of probation.

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed, this 9th day of November, 2006 to **Jeffrey Tsai, Esq.; Assistant United States Attorney**, the Office of the United States Attorney, 99 NE 4th Ave. Suite 400, Miami, Florida 33132 and **Parish J. Gibson**, U.S. Probation Officer, 301 Simonton Street, Suite 230, Key West, FL 33040-6812.

RESPECTFULLY SUBMITTED,

| | |
|---|---|
| **LAW OFFICES OF FREDERICK SAKE** | **LAW OFFICES OF KATHY HAMILTON** |
| 4770 Biscayne Blvd. Suite 640 | 1900 S. Bayshore Drive |
| Miami, FL 33137 | Coconut Grove, Florida 33133 |
| Ph. (305) 673-3700 | Ph. (305) 856-6300 |
| Cell (305) 773-3031 | Fax (305) 856-8266 |
| LawMiami@aol.com | kathyhlaw@aol.com |
| BY: *Frederick Sake by KH* | By: *Kathy Hamilton* |
| **FREDERICK SAKE, ESQ.** | **KATHY HAMILTON, ESQ.** |
| **FBN 212301** | **FBN 241881** |

ATT
Mercy

I Authorize Mercy to
charge my credit card $1500—
for storage @ Sunny Isles marina

*[signature]*

Visa. 4417-1680-8215-4984
Exp. 09/02

Composite Exhibit "A"

I Authorize Mercy to
charge my credit card $1500 —
for storage @ Sunny Isles marina

*Lay Helly* (signature)

Att Mercy

Visa 4417-1680-8215-4984
Exp. 09/02

L. Helfries

DATE: 01/24/01           TIME: 12:16

SUNNY ISLES MARINA
400 SUNNY ISLES BLVD
N MIAMI BCH. FL 331600000
305 944 9182

CLERK                                    ID
------                                   ----------

QUAN       DESCRIPTION              AMT
           S78.
----       ------------------------  -------
----       ------------------------  -------
----       ------------------------  -------
                              SUB
REF NO    01024001          TAX
AUTH NO   024513
TRAN TYPE SALE              TOTAL  1500.00
ACCOUNT #                   EXP
4417168082154984            0902

SIGNATURE X  on file
I AGREE TO PAY ABOVE TOTAL AMOUNT
ACCORDING TO CARD ISSUER AGREEMENT
(MERCHANT AGREEMENT IF CREDIT VOUCHER)

THANK YOU

TOP COPY-MERCHANT BOTTOM COPY-CUSTOMER

# FIRST USA.

MLB 07 0
33676800 395

| ACCOUNT NUMBER | PAST DUE AMOUNT | NEW BALANCE | MINIMUM PAYMENT DUE | PAYMENT DUE DATE | WRITE AMOUNT OF PAYMENT |
|---|---|---|---|---|---|
| 4417 1680 8215 4984 | 0.00 | 9430.52 | 618.52 | 03/16/01 | |

FIRST USA BANK, NA
PO BOX 94014
PALATINE IL 60094-4014

LANDEN N KESSLER
950 NE 182ND TERR
NORTH MIAMI B FL 33162-1163

Detach here ▼

For customer service 24 hours a day, call: **800-955-9900**
(Outside U.S.A., call 302-594-8200)

PAGE 1 OF 2

| ACCOUNT NUMBER | TOTAL CREDIT LINE | AVAILABLE CREDIT LINE | STATEMENT DATE | PAYMENT DUE DATE | MINIMUM PAYMENT DUE |
|---|---|---|---|---|---|
| 4417 1680 8215 4984 | 9000 | 1586- | 02/19/01 | 03/16/01 | 618.52 |

| TRANS. DATE | POST DATE | REFERENCE NUMBER | MERCHANT NAME OR TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|---|---|
| | | | PREVIOUS BALANCE | 7930.38 |
| 0118 | 0119 | 24164070JBJSPLFFF | BP OIL         48126742 MIAMI    FL | 22.98 |
| 0122 | 0122 | 74417110N027KP8S6 | PAYMENT - THANK YOU | 1000.00- |
| 0123 | 0123 | 24897390RAB1NTEA5 | TEXACO INC 91002167639 MIAMI   FL | 18.09 |
| 0124 | 0124 | 24158130T0009RG0Q | SUNNY ISLES MARINA N MIAMI BEACH FL | 1500.00 |
| 0127 | 0127 | 24164050WB018XR1T | MOBIL OIL 59  01280965 MIAMI   FL | 22.18 |
| 0128 | 0128 | 24266570X5ZY5HYZS | CAPTAIN BOBS SHRIMP DOCK KEY WEST  FL | 44.00 |
| 0128 | 0128 | 24610430X03RWH5MQ | COURTYARD BY MARRIOTT KEY WEST   FL | 166.14 |
| 0129 | 0129 | 24164070XP84XVZ33 | AMOCO         01480607 MIAMI   FL | 22.72 |
| 0204 | 0204 | 2429910143H071NHZ | SHELL NO 27522548208 MIAMI   FL | 23.32 |
| 0205 | 0205 | 24692161400KQ6M58 | AOL*ONLINE SERVICE 0201   800-827-6364 VA | 21.95 |
| 0205 | 0205 | 24692161400KR5ZVS | BALLY TOTAL FITNESS 04   562-484-2980 CA | 25.00 |
| 0209 | 0209 | 24399001B1ZDA5D2T | AMC           01005883 AVENTURA   FL | 31.00 |
| 0209 | 0209 | 24692161800PX95B9 | CINGULAR WIRELESS        800-947-5096 FL | 177.45 |
| 0210 | 0210 | 24299101A23VE08VH | CITGO0570 PASADENA CITGO PEMBROKE PINE F | 22.64 |
| 0211 | 0211 | 24266571BF0HZZGPN | ELECTS BOUTIQUE #94 AVENTURA    FL | 36.19 |
| 0211 | 0211 | 24266571BF0J0627W | ELECTS BOUTIQUE #386 MIAMI   FL | 134.15 |
| 0217 | 0217 | 24299101H3Q4N86AB | SHELL NO 20958700260 MIAMI   FL | 22.98 |
| | | | OVERLIMIT FEE | 29.00 |
| | | | PERIODIC RATE    *FINANCE CHARGE* | 180.35 |
| | | | NEW BALANCE | |

THIS IS A BILLING SUMMARY FACSIMILE - NOT A STATEMENT

Send billing and other inquiries to:
First USA Bank, N.A., P.O. Box 8650, Wilmington, DE 19899-8650

**First USA Bank, N.A.**

# FIRST USA.

MLB X7 0
33676800 237

| ACCOUNT NUMBER | PAST DUE AMOUNT | NEW BALANCE | MINIMUM PAYMENT DUE | PAYMENT DUE DATE | WRITE AMOUNT OF PAYMENT |
|---|---|---|---|---|---|
| 4417 1680 8215 4984 | 188.00 | 11025.10 | 2433.10 | 04/14/01 | |

FIRST USA BANK, NA
PO BOX 94014
PALATINE IL 60094-4014

LANDEN N KESSLER
950 NE 182ND TERR
NORTH MIAMI B FL 33162-1163

Detach here ▼

For customer service 24 hours a day, call:
(Outside U.S.A., call 302-594-8200)   800-955-9900

| ACCOUNT NUMBER | TOTAL CREDIT LINE | AVAILABLE CREDIT LINE | STATEMENT DATE | PAYMENT DUE DATE | MINIMUM PAYMENT DUE |
|---|---|---|---|---|---|
| 4417 1680 8215 4984 | 9000 | 2026- | 03/20/01 | 04/14/01 | 2433.10 |

| TRANS. DATE | POST. DATE | REFERENCE NUMBER | MERCHANT NAME OR TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|---|---|
| | | | PREVIOUS BALANCE | 9430.52 |
| 0219 | 0220 | 24046941KS662ZSNA | AMERICAS MART       404-2203054   GA | 551.00 |
| 0219 | 0220 | 24046941KS662ZSN2 | AMERICAS MART       404-2203054   GA | 605.00 |
| 0225 | 0225 | 24299101R3Q4NEX57 | SHELL NO 20958700260 MIAMI    FL | 23.61 |
| 0305 | 0305 | 24692162000E078PV | BALLY TOTAL FITNESS 04   562-484-2980 CA | 25.00 |
| 0305 | 0305 | 24692162000E7NTZW | AOL*ONLINE SERVICE 0301  800-827-6364 VA | 21.95 |
| 0308 | 0308 | 241215124EHPEWL06 | SPOTMASTER CLEANERS INC MIAMI   FL | 39.58 |
| 0309 | 0309 | 242991024304MVZN8 | SHELL NO 20958700260 MIAMI    FL | 22.75 |
| 0313 | 0313 | 24001752960WF8H04 | TRIBAL SMOKE SHOP #1 FORT LAUDERDA FL | 51.00 |
| | | | OVERLIMIT FEE | 29.00 |
| | | | LATE FEE | 29.00 |
| | | | PERIODIC RATE   *FINANCE CHARGE* | 196.69 |

AN OVERLIMIT FEE WAS ASSESSED WHEN YOUR ACCOUNT BALANCE
EXCEEDED THE ESTABLISHED CREDIT LIMIT ON 02/20/01.

NEW BALANCE    11025.10

AVERAGE DAILY BALANCE
SUBJECT TO FINANCE CHARGE:
PURCHASES AND CASH ADVANCES            10767.46    DAILY MERCH RATE           0.0629 %
PREVIOUS BILLING CYCLE PURCHASES           0.00    ANNUAL PERCENTAGE RATE    22.99 %

THIS IS A BILLING SUMMARY FACSIMILE - NOT A STATEMENT

Send billing and other inquiries to:
First USA Bank, N.A., P.O. Box 8650, Wilmington, DE 19899-8650

First USA Bank, N.A.

## AFFIDAVIT OF FRAUD CLAIM
## (Continued - Page 2)

The following charges and/or checks were not authorized:

| Date | Amount | Merchant Information |
|---|---|---|
| 02/09/2001 | 177.45 | CINGULAR WIRELESS |
| 01/24/2001 | 1500.00 | SUNNY ISLES MARINA |
| 02/19/2001 | 551.00 | AMERICAS MART |
| 02/19/2001 | 605.00 | AMERICAS MART |

If there are any additional unauthorized charges or checks, please list them in the space provided below:

Ms. Brazington
Creditor Enterchange inc.
1-800-724-1107


1-800-555-1212

Account: 4417-1680-8215-4984    Date: 04/23/2001    RISGIJ    Page 2 of 2

(Rev. 06/2005)Sealed Document Tracking Form

*Deny the Motion to Seal* #29 11/9/06

# UNITED STATES DISTRICT COURT
## Southern District of Florida

Case Number: 06-20233 CR Moreno

Plaintiff  United States of America

v.

Defendant  Lunden Noah Kessler

### SEALED DOCUMENT TRACKING FORM

*Party Filing Matter Under Seal*
Name: Kathy Hamilton
Address: 1900 S. Bayshore Dr.
Telephone: Coconut Grove, FL 33133

On behalf of (select one):   ☐ Plaintiff   ☒ Defendant

Date sealed document filed: November 9, 2006

If sealed pursuant to statute, cite statute: Response to Sealed Document - PSI

If sealed pursuant to previously entered protective order, date of order and docket entry number: _____

The matter should remain sealed until:

☐ Conclusion of Trial                    ☐ Arrest of First Defendant
☒ Case Closing                           ☐ Conclusion of Direct Appeal
☐ Other: _____
☐ Permanently. Specify the authorizing law, rule, court order:

The moving party requests that when the sealing period expires, the filed matter should be (select one):

☒ Unsealed and placed in the public portion of the court file     ☐ Destroyed
☐ Returned to the party or counsel for the party, as identified above

Attorney for: Lunden Noah Kessler